J-S47019-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JERREHIAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HAVDECO PARTNERS | : | No. 591 EDA 2017 |

Appeal from the Order Entered January 25, 2017
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): 09-23573

BEFORE: GANTMAN, P.J., LAZARUS, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY LAZARUS, J.: **FILED FEBRUARY 13, 2018**

Jerrehian, a Pennsylvania general partnership, appeals from the order, entered in the Court of Common Pleas of Montgomery County, denying its motion to remove a nonsuit entered in favor of Havdeco Partners (Havdeco). After our review, we affirm.

Jerrehian and Havdeco are adjacent landowners; the rear of Jerrehian's commercial property, located at 25-27 Haverford Station Road, Haverford, PA ("Jerrehian Property"), abuts Havdeco's property ("Havdeco Property" or "Haverford Square Property"). Jerrehian sought interpretation and enforcement of a 1950 Easement Agreement for its benefit over Havdeco's adjoining property. Central to this dispute is the fact that parking is at a premium in this growing commercial and retail center.

On July 30, 2009, Jerrehian filed a complaint for declaratory judgment and injunctive relief against Havdeco. A bench trial in this case began on

December 5, 2016, before the Honorable Steven C. Tolliver. At the conclusion of Jerrehian's case in chief, Havdeco moved for a compulsory nonsuit. Following oral argument on the motion, the court granted Havdeco's motion. On December 14, 2016, Jerrehian filed a motion to remove the nonsuit. The court denied this motion by order dated January 24, 2017 and entered on the docket on January 25, 2017.[1] This appeal followed. Jerrehian raises two issues for our review:

> 1. Whether the court erred by granting [Havdeco's] motion for nonsuit by interpreting the language of an express written easement in a way that is contrary to fundamental principles of easement and contract construction that are well-established in Pennsylvania law?
>
> 2. Whether the court erred in granting [Havdeco's] motion for nonsuit by failing to consider only the evidence introduced by [Jerrehian] and evidence favorable to [Jerrehian] introduced by [Havdeco]?

Appellant's Brief, at 4.

Havdeco is the owner of the property known as the Haverford Square Shopping Center, which is located at the intersection of Lancaster Avenue and Haverford Station Road in Haverford. The Jerrehian Property, located at 25-27 Haverford Station Road, adjoins the parking lot area of the Havdeco Property. In 1984, Havdeco erected a fence along the rear of the adjoining

---

[1] On February 1, 2017, Jerrehian filed a notice of appeal from the January 25, 2017 Order, prior to the March 8, 2017 entry of judgment in favor of Havdeco. "Where a court has entered a judgment of compulsory nonsuit, the appeal lies not from the entry of the judgment itself, but rather from the court's refusal to remove it." *Vicari v. Spiegel*, 936 A.2d 503, 508 n.5 (Pa. Super. 2007) (citation omitted).

properties, which included the Jerrehian Property, and which precludes access to and from the Jerrehian Property through the parking lot of Haverford Square. Complaint, 7/30/09, at ¶ 11. Specifically, Jerrehian averred the following in its complaint: (1) that it held an easement right "for ingress, egress and regress from Lancaster Avenue to its property known as 25-27 Haverford Station Road over the parking lot of [Havdeco's] property known as Haverford Square[,]" *id.* at ¶ 15(a); (2) that it sought an order directing Havdeco to "remove the fence[2] along [Havdeco's] property and the rear of [the] Jerrehian [P]roperty at 25-27 Haverford Station Road and to re-configure the entrance to Haverford Square at Lancaster Avenue in such a manner so as to allow ingress, egress and regress from Lancaster Avenue through its parking lot to [the] Jerrehian [P]roperty[.]" *id.* at 15(b); and that it sought to enjoin Havdeco and its successors and assigns "from installing any fence or taking any other action in any way limiting the right of [Jerrehian] and its successors and assigns and tenants and occupier from using [Havdeco's] parking lot at Haverford Square as a means of ingress, egress and regress from Lancaster Avenue to [the Jerrehian P]roperty[.]" *Id.* at ¶ 15(c).

---

[2] This fence was installed along the rear of the Jerrehian's Property, and parallel to Haverford Station Road, in order to "protect and preserve the use of the lot for invitees of tenants of the Haverford Square Property[.]" *See* Havdeco's Motion for Summary Judgment, Statement of Undisputed Facts, ¶ 27.

The Easement Agreement, entered into by the parties' predecessors in interest on April 26, 1950,[3] provides, in relevant part:

> That the Party of the First Part hath given and granted and by these presents doth give and grant unto the Parties of the Second Part and each of their heirs, successors and assigns, the free and uninterrupted use, liberty and privilege *over a said passageway leading northeastwardly* **from Lancaster Avenue**, Haverford, Lower Merion Township, Montgomery County, Pennsylvania *and extending between the Penn Fruit Market Building on the East and the Office Building on the [W]est* **to the parking space area of the Party of the First Part** as a means of ingress, egress and regress *for the said Parties of the Second Part and each of their heirs, successors and assigns and their tenants and under-tenants (contiguous to the passageway)* at all times and seasons into, along, upon and out of the said passageway in common with the Party of the First Part, its successors, assigns, tenants and occupiers for so long a period of time as the general physical buildings now erected on said premises remain unchanged in which case *Parties of the Second Part shall have equal right with Party of the First Part* **over any other access to said parking lot from Lancaster Avenue**.

Easement Agreement, 4/26/50, at ¶ 6 (emphasis added). Jerrehian claims that it is entitled to an easement over Havdeco's property. Jerrehian argues that the court's conclusion that the easement gives Jerrehian use of an easement *to* the parking area of Havdeco from Lancaster Avenue, but not *over* the parking area to the Jerrehian property, where the fence was erected,

---

[3] The Easement Agreement contained various other rights, listed in paragraphs 1 through 4 of the Agreement, all of which expired pursuant to the express terms of paragraph 5 of the agreement. **See** Easement Agreement, 4/26/50, at ¶ 5 ("It is understood and agreed between all parties to this Agreement that the conditions mentioned in Paragraphs #1-2-3-and four shall be binding upon all parties for a period of twenty years from the signing of this Agreement.").

ignores the express language of the easement and the rules of interpretation and enforcement of easement under Pennsylvania law.

Pursuant to Pennsylvania Rule of Civil Procedure 230.1, a court "on oral motion of the defendant, may enter a nonsuit on any and all causes of action, if, at the close of the plaintiff's case on liability, the plaintiff has failed to establish a right to relief." Pa.R.C.P. 230.1. Our standard of review regarding the entry of nonsuit is well settled:

> On appeal, entry of a compulsory nonsuit is affirmed only if no liability exists based on the relevant facts and circumstances, with appellant receiving the benefit of every reasonable inference and resolving all evidentiary conflicts in appellant's favor. The compulsory nonsuit is otherwise properly removed and the matter remanded for a new trial.

*Scampone v. Highland Park Care Ctr.*, 57 A.3d 582, 595–96 (Pa. 2012) (citations and quotations omitted). We review the evidence to determine whether the trial court abused its discretion or made an error of law. *Barnes v. Alcoa, Inc.*, 145 A.3d 730, 735 (Pa. Super. 2016).

The trial court's interpretation of the language in an easement is a question of law, and our scope of review is plenary. *See PARC Holdings, Inc. v. Killian*, 785 A.2d 106, 112 (Pa. Super. 2001). [T]he same rules of construction that apply to contracts are applicable in the construction of easements[.]" *McNaughton Properties, LP v. Barr*, 981 A.2d 222, 227 (Pa. Super. 2009) (citation omitted). "When reviewing an express easement, the language of the agreement, unless ambiguous, controls." *Baney v. Eoute*, 784 A.2d 132, 136 (Pa. Super. 2001). Clear contractual terms that are

capable of one reasonable interpretation must be given effect without reference to matters outside of the contract." *Id.*

> As with any contract *the rights conferred by the grant of an express easement must be ascertained solely from the language of the deed*, provided that the deed language is unambiguous. When the language is ambiguous, however, a court may resort to evidence of extrinsic circumstances as an aid to interpretation. When the purposes of an express easement are not specifically stated, the court must ascertain the objectively manifested intention of the parties in light of the circumstances in existence at the time of conveyance. Whether an ambiguity exists is a question of law subject to plenary review. However, resolution of conflicting parol evidence relevant to what the parties intended by an ambiguous provision is for the trier of fact.

*PARC Holdings*, *supra* at 112 (citations omitted) (emphasis added).

Here, the trial court found the easement language was unambiguous. Contrary to Jerrehian's interpretation, the language in paragraph 6 provides only for an easement *from Lancaster Avenue to the parking area of the Havdeco Property*, not, as Jerrehian argues, from the Havdeco Property to the Jerrehian Property, or from the Jerrehian Property to the Havdeco Property. Jerrehian argues that the court's determination "ignores the express language of the easement and the rules of the interpretation and enforcement of easements under Pennsylvania law." Appellant's Brief, at 14. We disagree.

Essentially, Jerrehian contends that the court disregarded the "Whereas" paragraphs of the Easement Agreement, as well as the first five paragraphs of the agreement, which have since expired. **See** note 3, **supra**. In particular, Jerrehian points to the third "Whereas" paragraph in the Easement Agreement, which reads:

> Whereas the Parties of the Second Part are desirous of having the use, liberty and privilege of certain passageways over the land of the party of the First Part as a means of ingress, egress and regress to said land owned by the Parties of the Second Part *and of parking on the Parking Area of the First Part* and Party of the First Part is desirous of parking on areas of Parties of the Second Part.

Easement Agreement, **supra** (emphasis added). That clause is effectuated by paragraph 2 of the Easement Agreement, which grants "reciprocal" parking rights for both parties. It states, in relevant part, that the

> Party of the First Part hath given and granted . . . unto the Parties of the Second Part, . . . the privilege of parking on the parking area of Party of the First Part . . . in return for reciprocal privileges to the party of the First Part for parking on areas of the parties of the Second Part.

Easement Agreement, **supra**, at ¶ 2. As noted, however, the rights granted in this paragraph expired pursuant to the terms of the agreement. **See id.**, at ¶ 5; **see supra**, n. 3. Were the court to interpret paragraph 6 to continue the reciprocal parking, this would not only ignore the clear language of paragraph 6, but would nullify paragraph 2. To reiterate, if the words are plain and unambiguous, as they are here, the matter is concluded. **See PARC Holdings**, **supra**; **see also Sigal v. Manufacturer Light & Heat Co**., 299 A.2d 646 (Pa. 1973).

The Easement Agreement clearly states that the easement is "over a said passageway leading *from* Lancaster Avenue . . . and extending between the Penn Fruit Market Building on the East and the Office Building on the West **to the parking space area of [Havdeco]**." Easement Agreement, 4/26/50,

at ¶ 6 (emphasis added). The fact is the fence, which was installed at the rear of Jerrehian Property (25-27 Haverford Station Road), in 1984, limits nearby parking for Jerrehian's tenant (currently Raya Coiffure). The fence essentially precludes travel from Jerrehian's property onto the parking lot of Haverford Square for additional parking.[4]

Jerrehian also argues the easement should be construed in favor of the grantee, and thus the court's interpretation is contrary to "fundamental principles of easement and contract construction[.]" Appellant's Brief, at 14, 24. We disagree. Where the terms of the grant are *ambiguous*, the express easement is construed in favor of the grantee. **See Lease v. Doll**, 403 A.2d 558 (Pa. 1979). The court's interpretation may be contrary to Jerrehian's business interests, but the language is clear that the easement is over a passageway (between the old Penn Fruit Building and the office building) *from* Lancaster Avenue to the parking area of the Havdeco Property, the Haverford Square parking lot. The easement language at issue does not speak to access from the area that is now the Jerrehian Property to the Havdeco Property.

We find no abuse of discretion or error of law. **Barnes**, **supra**. We, therefore, affirm the trial court's order denying Jerrehian's motion to remove the nonsuit.

---

[4] As one enters from Haverford Station Road, 25-27 is on the right and there are about seven parking spaces immediately to the left and about four parking spaces to the rear of the Jerrehian Property. There is also metered parking on Haverford Station Road.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/13/18