J-A29023-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MARSHA GOULDING | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SATISH JINDEL | : | |
| | : | |
| Appellant | : | No. 625 WDA 2019 |

Appeal from the Order Entered, March 25, 2019,
in the Court of Common Pleas of Allegheny County,
Family Court at No(s):  FD 07-009307-004.

BEFORE:   BENDER, P.J.E., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KUNSELMAN, J.:                     **FILED JANUARY 31, 2020**

In this protracted equitable distribution action, Father, Satish Jindel, appeals *pro se* from the court's order granting special relief to Mother, Marsha Goulding, by requiring Father to take action on certain financial matters within 30 days.  Upon review of the record and the parties' briefs, we affirm.

The parties have been involved in contentious divorce litigation since 2007.  They entered into an agreement resolving the distribution of their marital assets, entitled "Final Equitable Distribution Order of Court by Consent" (FEDOCC), in 2008.  As part of this agreement, certain assets were to be transferred to the children at the age of 18.  The parties' two children, a son and a daughter, are now both over the age of 18.

_____

[*] Retired Senior Judge assigned to the Superior Court.

The day after their daughter's 18th birthday, October 10, 2018, Mother filed a petition for special relief to compel an accounting and transfer of funds to the children's accounts. The trial court entered an order dated September 20, 2018,[1] which directed Father to take action on four matters, summarized as follows:

(1) **2011 Tax Refund:** Within 45 days, Father was ordered to give certain tax documents to Mother to confirm the money owed to Mother for certain increased taxes resulting from Father's request in 2015 to claim the children as dependents on his 2011 tax return instead of mother.

(2) **Son's BNY Mellon Bank Custodial Account and Ameritrade Account:** Within 45 days, Father was ordered to execute documents necessary to transfer the funds from the son's BNY Mellon account and Ameritrade account.

(3) **529 Account Held for Daughter:** Father was ordered to execute documents necessary to transfer the funds into daughter's 529 account to one within the daughter's control within 45 days of her 18th birthday.

(4) **Daughter's BNY Mellon Bank Custodial Account:** Father was ordered to execute documents necessary to transfer funds from the daughter's BNY Mellon custodial account to an account controlled by the daughter within 45 days of her 18th birthday.

*See* Trial Court Opinion, 6/13/19, at 2; Order, 9/20/18. No appeal was taken from this order.

---

[1] It is unclear to the Court why this order was not filed until October 11, 2018, three weeks after it was dated. We note that the initial presentation of this petition for special relief was scheduled for September 20, 2018. Nonetheless, we refer to it as the September 20, 2018 order as the trial court and parties have.

Before this order was filed, the trial court entered a separate order, dated September 26, 2018, addressing matters 3 and 4. The court ordered Father "to transfer the funds from the daughter's 529 account and BNY Mellon account as listed in the parties' FEDOCC to appropriate accounts controlled by the daughter within 45 days of her 18th birthday, and receipt of proper 529 and bank account numbers from the child, whichever is later." *See id.* at 3; Order, 9/26/18.

The parties were unable to comply with the trial court's directives in these orders without conflict. Consequently, on March 20, 2019, Mother presented another petition for special relief to transfer the 529 account and obtain an accounting. The trial court again granted Mother relief in an effort to implement the prior agreement. The following summarizes the updated status of the parties' obligations following this special relief order:

(1) **2011 Tax Refund:** Although Father provided the tax documents and affirmed the amount he owed, being $1,278.56, as previously ordered, it had not yet been paid to daughter; Father was ordered to pay that sum within 30 days.

(2) **Son's BNY Mellon Bank Custodial Account and Ameritrade Account:** The transfer of the BNY Mellon account was completed. However, Mother delayed giving Father the necessary documents to transfer the Ameritrade account until shortly before presentation of the petition for special relief on March 20, 2019; Father was ordered to execute the documents within 30 days.

**(3) 529 Account Held for Daughter:** Father argued that he should only have to transfer the original deposit amount of $24,050 made in 2008 for the daughter and should not have to do so until there was a determination that it served the daughter's best interests; Father was ordered to transfer the funds in the 529

- 3 -

account to daughter, which was clearly in her best interest since she had now begun college, and to execute documents necessary to make the transfer within 30 days.

(4) **Daughter's BNY Mellon Bank Custodial Account:** As with the son, the transfer of this account was completed.

*See* Trial Court Opinion, 6/13/19, at 3-4; Order 3/25/19. Additionally, the trial court denied each party's request to hold the other in contempt, along with Father's request for a hearing on his claim that Mother withdrew 529 funds without Father's involvement. However, the trial court forbade Mother from making any future withdrawals without an order of court. *Id.* at 4.

Father now appeals from the March 25, 2019 order. The trial court did not order a 1925(b) statement.

Father raises five issues for our consideration, which we have reordered for ease of disposition and rephrased as follows:

1. Did the trial court err by ordering Father to execute documents to transfer the Ameritrade account to son when the documents were signed in the court's presence on March 20, 2019, at the time of presentation of Mother's petition for special relief.

2. Did the trial court err by ordering that "[Father] execute any documents necessary to transfer the funds in the daughter's 529 account to a 529 account within the control of the daughter within 30 days of this Order."

3. Did the trial court abuse its discretion by denying Father's request to offset the accountant fees he incurred to obtain the 2011 IRS refund.

4. Did the Court err by denying a hearing for sanctions and damages resulting from mother's failure to provide account details and withdrawal of funds from the 529 account owned by the Father on her own accord.

5. Did the trial court abuse its discretion by denying Father's request for sanctions against Mother for failing to provide account

- 4 -

details to Father so that he could transfer funds and for not timely seeking transfer of 2011 IRS refund.

*See* Father's Brief at 3-5.

In addressing Father's first three issues, relating to the special relief orders from the trial court, we note that we review such orders under an abuse of discretion standard.

> Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason. Similarly, the trial court abuses its discretion if it does not follow legal procedure.

*Lachat v. Hinchcliffe*, 769 A.2d 481, 487 (Pa. Super. 2001) (citation omitted). "'An abuse of discretion exists when the trial court has rendered a decision or a judgment which is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias or ill will.'" *Prol v. Prol*, 935 A.2d 547, 551 (Pa. Super. 2007)(quoting *Pratt v. St. Christopher's Hosp.*, 824 A.2d 299, 302 (Pa. Super. 2003), *aff'd,* 866 A.2d 313 (Pa. 2005)). When reviewing questions of law in the context of an equitable distribution matter, our scope of review is plenary. *Prol*, 935 A.2d at 552.

In his first issue, Father argues that the trial court erred in ordering him to execute documents for the son's Ameritrade account in its March 25, 2019, order because Father had already done so in court at the presentation of Mother's petition for special relief on March 20, 2019. According to Father,

this demonstrates the trial court's prejudice and inattention to Father's arguments. Father's Brief at 6.

Mother acknowledges that Father executed the necessary documents during argument on Mother's petition. Mother's Brief at 3.

In its opinion, the trial court suggested that this issue was moot. Trial Court Opinion, 6/13/19, at 7.

As a general rule, an actual case or controversy must exist at all stages of the judicial process, or a case will be dismissed as moot. *Pilchesky v. Lackawanna Cnty.*, 88 A.3d 954, 964 (Pa. 2014). "An issue before a court is moot when a determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy." *Printed Image of York, Inc. v. Mifflin Press, Ltd.*, 133 A.3d 55, 59 (Pa. Super. 2016) (some punctuation omitted). Where an appeal is mooted by a change in intervening facts or law, the appeal is subject to dismissal. *Pilchesky*, 88 A.3d at 964.

Here, father has complied with his obligation to execute the necessary documents for the son's Ameritrade account. Thus, this matter has been resolved, and no actual controversy exists. Consequently, we dismiss this issue as moot because there is nothing for us to decide.

In his second issue, Father argues that the trial court erred by ordering him to "execute any documents necessary to transfer the funds in the daughter's 529 account to a 529 account within the control of the daughter

within 30 days of this Order". Father's Brief at 7. Father claims this was error for several reasons.

First, Father argues that the 529 account is his and not "daughter's 529 account" as stated in the order; according to Father, the trial court acknowledged this during motions, but nonetheless referred to it as daughter's. Therefore, the order is invalid and should be vacated. Father's Brief at 8.

The trial court observed that this is a "meaningless semantical point." Trial Court Opinion, 6/13/19, at 7. The court explained that the 529 accounts the parties established for the children have been referred to as the son's or daughter's accounts throughout the litigation. The FEDOCC entered on October 2, 2008, which Father signed, referred to the 529 accounts for the daughter and the son as the "Children's Accounts." *Id.* Moreover, in correspondence to Mother explaining the benefit of him having the children as dependents on his 2011 tax return, Father himself directly referred to the accounts in the same way. *Id.* at 9.

Based upon this explanation, we conclude that the trial court did not abuse its discretion.

Next, Father argues that he cannot transfer the funds into a "529 account within the control of the daughter" as directed in the September 20, 2018 order because Father has no knowledge of the account details. According to Father, as with the September 20, 2018 order, the trial court

again failed to direct Mother to provide necessary details about the account so that he could accomplish this transfer.  Father's Brief at 8.

In rejecting Father's argument, the trial court explained:

If Father needed information, he could have asked Mother's counsel or presented a motion to this [c]ourt to compel the information.  Instead, he wrote in . . . email correspondence to Mother's counsel that because Mother's counsel was late in getting back to Father, 'I am done with this matter. I do not want to receive any more communication in this regard.' . . . [I]f Father needed information, it was Father himself who stymied the efforts, and, as noted, Father could have asked this [c]ourt to compel the information.  Mother's purported delays do not alleviate Father's obligations under the parties' settlement agreement, and he has presented no authority to the contrary.

Trial Court Opinion, 6/19/19, at 10.

Given this explanation, we conclude that the trial court did not abuse its discretion.

Father further contests the amount of money the court required him to transfer to daughter.  He argues that, although interest was earned and he made additional contributions following the execution of the FEDOCC, the only amount that he was obligated to transfer was the amount stated in the FEDOCC, specifically $24,050.  According to Father, the trial court and Mother's counsel agreed with this, but in its order the trial court did not exclude the additional contributions from the amount he was required to transfer to daughter.  Additionally, Father argues that the trial court erred in failing to conduct a hearing to determine if the transfer of the funds in the 529

account at this time would be in the daughter's best interest. Father's Brief at 9-10.

In rejecting this argument, the trial court explained that the FEDOCC, which provided for the funding of this account, clearly provided that the "proceeds in these accounts shall be used exclusively for the benefit of the children." The transfer of these funds was then addressed in its September 20, 2018 order. The trial court ordered that Father "execute any documents necessary to transfer **the funds in** the Daughter's 529 account" to daughter. "There was no restriction that the transfer would entail anything less than the full balance of the account." Trial Court Opinion, 6/19/19, at 8.[2] Moreover, at the time of the September 20, 2018 order, the trial court had determined that the transfer of the funds would be in the best interest of daughter. See Order, 3/25/19, at 3. Since Father did not appeal that order, the trial court maintains he waived this issue. We agree. Father cannot challenge the amount he is required to transfer in this appeal. The order requiring him to transfer funds was final on October 11, 2018. Father had until November 13, 2018 to appeal.[3]

---

[2] In other words, if Father chose to make additional contributions to this account following the divorce, he did so at his own risk knowing the account was to be transferred to daughter under the terms of the FEDOCC.

[3] We note that the 30th day following entry of the order was November 11, 2018 was a Sunday and the next day was a holiday. Consequently, pursuant to Pa.R.C.P 106(b), Father had until November 13, 2018 to file his appeal.

In his third issue, Father argues that the trial court abused its discretion by denying Father's request to offset the accountant fees of $500 he incurred to obtain an IRS refund for the 2011 tax year as the trial court did for Mother in its February 19, 2015 order. Additionally, he argues that, in its March 25, 2019 order, the trial court failed to direct Mother to provide the necessary account information so that he could deposit the refund as required. Father's Brief at 13.

In rejecting this argument, the trial court explained that it issued the February 19, 2015 order to allow "Father to go back and claim the children as dependents on [his] 2011 return, and the consequences of that pursuit. By its terms, the Order allowed Father to make the claim as long ***as he paid the costs of preparation of Mother's return***. . . . The Order, to which Father consented, made no mention [of] Father's accountant fees." Trial Court Opinion, 6/19/19, at 6. The trial court again noted that Father never asked for the information. ***Id.*** at 11 (emphasis added).

Notably, the February 19, 2015 order was a consent order agreed to by the parties and signed by the court. No appeal was taken therefrom. Father only now raises the issue of offsetting his accountant fees in response to Mother enforcing his obligation to pay the refund as agreed under that order. Again, Father failed to timely raise the issue of his accountant fees. Therefore, he waived this issue.

As to Father's complaint that the trial court did not direct mother to provide the necessary information so that Father could comply with the order

that he deposit the funds into daughter's account, the trial court resolved the matter by directing Father to "pay" the refund rather than "deposit", making the account information unnecessary and giving Father additional time to comply. Order, 3/25/19, at 4. In doing so, we conclude that the trial court did not abuse its discretion.

Turning to Father's fourth and fifth issues, which challenge the trial court's denial of contempt and sanctions, we note that our standard of review is as follows:

> This Court will reverse a trial court's order denying a civil contempt petition only upon a showing that the trial court misapplied the law or exercised its discretion in a manner lacking reason.

*MacDougall v. MacDougall*, 49 A.3d 890, 892 (Pa. Super. 2012)(citations omitted).

Essentially, father argues that the trial court erred in refusing to impose sanctions against mother because she: 1) failed to provide account information to transfer the 529 funds to daughter, and instead, withdrew the funds herself without Father's involvement; and 2) failed to provide account information and timely seeking transfer of the 2011 IRS refund in a timely manner. Father's Brief at 13.

In addressing the issue of sanctions, the trial court noted that each party asked for sanctions against the other party. However, the trial court declined to impose sanctions against either party. Both parties had failed to comply with the relevant orders. Order, 3/25/19, at 4; Trial Court Opinion, 6/19/19,

- 11 -

at 5. In the order now appealed, the trial court sought to clarify the parties' obligations in an effort to bring finality to this matter. Order, 3/25/19, at 4. Moreover, the trial court opined that there was nothing to be gained by ordering sanctions against either party, particularly so, given that this lengthy litigation was presumably near its end. Trial Court Opinion, 6/19/19, at 11-12.

Considering this explanation, we conclude that the trial court did not misapply the law or exercise its discretion in a manner lacking reason when it denied Father's request for sanctions.

Order affirmed. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/31/2020